# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP547 |

COMPLETE TITLE:
        State of Wisconsin ex rel. Michael Anderson,
               Petitioner-Appellant-Petitioner,
          v.
        Town of Newbold,
               Respondent-Respondent.

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 389 Wis. 2d 309,935 N.W.2d 856
PDC No:2109 WI App 59 - Published

| | |
|---|---|
| OPINION FILED: | January 27, 2021 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 1, 2020 |

SOURCE OF APPEAL:
| | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Oneida |
| JUDGE: | Patrick F. O'Melia |

JUSTICES:
ANN WALSH BRADLEY, J., delivered the majority opinion of the Court in which ROGGENSAKC, C.J., ZIEGLER, DALLET, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined.
NOT PARTICIPATING:

ATTORNEYS:

    For the petitioner-appellant-petitioner, there were briefs filed by *Timothy B. Melms, Mary M. Hogan,* and *Hogan & Melms, LLP*, Rhinelander. There was an oral argument by *Timothy B. Melms* and *Mary M. Hogan*.

    For the respondent-respondent, there was a brief submitted by *Daniel L. Vande Zande, Sam Kaufman,* and *Vande Zande & Kaufman, LLP*, Waupun. There was an oral argument by *Daniel L. Vande Zande*.

An amicus curiae brief was submitted on behalf of Wisconsin Association of Lakes, Inc., Big Portage Lake Riparian Owners Association, Blue Lake Preservation Association, Ballard-Irving-White Birch Lakes Association, Inc., Deer Lake Improvement Association, Wildcat Lake Association, Lake Katherine Association, Inc. and Plum Lake Association by *Christa O. Westerberg* and *Pines Bach LLP,* Madison.

An amicus curiae brief was submitted on behalf of Wisconsin Towns Association by *Joseph Ruth*, Shawano.

An amicus curiae brief was submitted on behalf of Wisconsin Realtors Association and Wisconsin Builders Association by *Thomas D. Larson*, Madison. There was an oral argument by *Thomas D. Larson*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2018AP547
(L.C. No. 2017CV55)

STATE OF WISCONSIN        :       IN SUPREME COURT

**State of Wisconsin ex rel. Michael Anderson,**

     **Petitioner-Appellant-Petitioner,**

  **v.**

**Town of Newbold,**

     **Respondent-Respondent.**

**FILED**

**JAN 27, 2021**

Sheila T. Reiff
Clerk of Supreme Court

ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ZIEGLER, DALLET, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a dissenting opinion, in which REBECCA GRASSL BRADLEY, J., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Michael Anderson, seeks review of a published court of appeals decision affirming the circuit court's order upholding the Town of Newbold's denial of Anderson's attempt to subdivide his property.[1] Anderson's proposed subdivision was denied by the

---

[1] State ex rel. Anderson v. Town of Newbold, 2019 WI App 59, 389 Wis. 2d 309, 935 N.W.2d 856 (affirming order of circuit court for Oneida County, Patrick F. O'Melia, Judge).

Town because the two resulting lots would not meet the Town's applicable minimum shoreland frontage requirement as set by Town ordinance.

¶2 Anderson contends that the Town's minimum shoreland frontage requirement is unenforceable because it is a shoreland zoning regulation that the Town does not have the authority to enact. The Town, on the other hand, argues that the requirement is a permissible exercise of its subdivision authority.

¶3 We conclude that the Town ordinance at issue is a permissible exercise of the Town's subdivision authority pursuant to Wis. Stat. § 236.45 (2017-18).[2] The Town thus proceeded on a correct theory of law when it denied Anderson's request to subdivide his property in a way that would contravene the ordinance.

¶4 Accordingly, we affirm the decision of the court of appeals.

I

¶5 Anderson owns property on Lake Mildred in the Town of Newbold, which includes 358.43 feet of shoreline frontage. Seeking to subdivide his property into two separate lots, one with 195 feet of shoreline frontage and the other with 163.43 feet, Anderson submitted a proposal to the Town.

¶6 At its November 3, 2016 meeting, the Town Plan Commission considered Anderson's proposal. The commission

---

[2] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

2

recommended that the Town deny Anderson's proposal based on its failure to comply with the Town's subdivision ordinance. According to the commission's minutes, denial was recommended "because [the plan] does not comply with Town of Newbold On-Water Land Division Standards 13.13 which requires a minimum 225 foot lot width at the ordinary high water mark" of Lake Mildred. Adopting the commission's recommendation, the Town Board denied Anderson's proposed subdivision.

¶7 Anderson sought certiorari review of the Town's decision in the circuit court. He contended that the Town proceeded on an incorrect theory of law by denying his proposal to subdivide his property. Specifically, he relied on Wis. Stat. § 59.692,[3] contending that this statute prevents municipalities from enforcing local shoreland zoning standards that are more restrictive than the standards that have been enacted on a state level. Anderson argued that the Town of Newbold ordinance is invalid because it is more restrictive than state standards.

¶8 The circuit court issued a written decision, in several places referring to the case as a "close call." Although it stated that Anderson "makes a fairly strong case," it ultimately did not rule in his favor and affirmed the Town's decision. The circuit court concluded that the Town ordinance

---

[3] Wisconsin Stat. § 59.692(1d)(a) provides: "An ordinance enacted under this section may not regulate a matter more restrictively than the matter is regulated by a shoreland zoning standard."

3

at issue does not fall within the purview of Wis. Stat. § 59.692:  "It is not a zoning ordinance enacted under Wis. Stat. Ch. 59 at all; instead, it is a subdivision ordinance enacted under Wis. Stat. Ch. 236."

¶9  Recognizing a distinction between zoning ordinances and subdivision ordinances, the circuit court also observed an overlap between the two concepts that ultimately proved dispositive:  "Because there is a recognized overlap between these two functions (i.e. zoning and subdivision controls), Mr. Anderson's concern that 'the Town of Newbold is performing a zoning function' with its subdivision ordinance cannot ultimately prevail."  It reached this conclusion because "the statutory 'enacted under this section' language chosen by the legislature [in Wis. Stat. § 59.692] is difficult to apply to a local subdivision ordinance enacted under Wis. Stat. Ch. 236."

¶10 Anderson appealed, and the court of appeals affirmed the circuit court, upholding the Town's denial of Anderson's proposed subdivision.  State ex rel. Anderson v. Town of Newbold, 2019 WI App 59, 389 Wis. 2d 309, 935 N.W.2d 856.  The court of appeals recognized what it described as an "undeniable tension between Wis. Stat. §§ 59.692 and 236.45[,]" yet like the circuit court, it determined that "the Town has the authority to enforce the Shoreland Ordinance, which, again, was undisputedly enacted as a lawful exercise of the Town's subdivision authority under Wis. Stat. § 236.45."  Id., ¶¶21-22.  Anderson petitioned for review in this court.

4

II

¶11 This case arrives here on certiorari review. "Certiorari is a mechanism by which a court may test the validity of a decision rendered by a municipality, an administrative agency, or an inferior tribunal." Ottman v. Town of Primrose, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411.

¶12 On certiorari review, we examine the decision of the Town Board, not the decision of the circuit court. Oneida Seven Generations Corp. v. City of Green Bay, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162. Our review is limited to (1) whether the municipality kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question. Wisconsin Dolls, LLC v. Town of Dell Prairie, 2012 WI 76, ¶18, 342 Wis. 2d 350, 815 N.W.2d 690.

¶13 In our review, we must interpret several statutes. Statutory interpretation presents a question of law this court reviews independently of the determinations rendered by the circuit court and court of appeals. Shugarts v. Mohr, 2018 WI 27, ¶18, 380 Wis. 2d 512, 909 N.W.2d 402.

III

¶14 We begin by setting forth necessary background regarding the statutory authority of various governmental entities to regulate land use and subdivision, with a specific

eye to shorelands. Subsequently, we examine Anderson's arguments advanced in this case.

A

¶15 At issue is the validity of the Town's minimum shoreland lot size requirements found in Town of Newbold Ordinance 13.13. In Ordinance 13.13.01, the Town sets forth the purpose and intent of the provision:

> The Town Board has determined that in order to enhance the quality of the division or subdivision of land within areas of the Town affecting properties having frontage on any of the lakes, flowages, ponds, navigable rivers and/or streams located within the Town, that standards more stringent than current County development standards be established as provided . . . .

¶16 Accordingly, the Town set minimum lot frontage requirements for each lake within its borders. As applicable to Lake Mildred, such minimum lot frontage is 225 feet. Anderson challenges this regulation as outside the statutory authority of the Town to enact.

¶17 In terms of this certiorari review, the issue focuses on the second prong of such review——whether the Town proceeded on a correct theory of law in enacting the above-cited minimum shoreland lot size requirement. To determine whether the Town proceeded on a correct theory of law, we must interpret the relevant statutes that set the parameters for the regulation of land use controls by various governmental entities.

¶18 Statutory interpretation begins with the language of the statute. State ex rel. Kalal v. Cir. Ct. for Dane Cnty.,

2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.  If the meaning of the statute is plain, we need not further the inquiry.  Id.

¶19 "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  Id.  We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  Id., ¶46.

¶20 The Wisconsin Statutes provide a framework for the regulation of land use by various governmental entities.  Such regulation can take the form of planning, zoning, or platting.  Town of Sun Prairie v. Storms, 110 Wis. 2d 58, 68, 327 N.W.2d 642 (1983).  This court has recognized that "[z]oning and planning must be viewed as complementary devices used in community planning."  Id. (quoting E.C. Yokley, Law of Subdivisions, § 39 at 157-58 (2d ed. 1981)).

¶21 Not all lands are treated equally in terms of community planning.  Indeed, the legislature has recognized that shorelands are subject to unique considerations.  These considerations arise from the fact that shorelands abut navigable waters, the beds of which are held in trust by the State for all of its citizens.  Wis. Stat. § 281.31(1); Movrich v. Lobermeier, 2018 WI 9, ¶25, 379 Wis. 2d 269, 905 N.W.2d 807;

<u>R.W. Docks & Slips v. State</u>, 2001 WI 73, ¶19, 244 Wis. 2d 497, 628 N.W.2d 781.

¶22 Because shorelands present unique considerations, they are treated differently for purposes of zoning. The legislature has specifically stated that shoreland zoning regulations are "in the public interest." Wis. Stat. § 281.31(1).[4] In a full statement of policy, § 281.31(1) sets forth:

> To aid in the fulfillment of the state's role as trustee of its navigable waters and to promote public health, safety, convenience and general welfare, it is declared to be in the public interest to make studies, establish policies, make plans and authorize municipal shoreland zoning regulations for the efficient use, conservation, development and protection of this state's water resources. The regulations shall relate to lands under, abutting or lying close to navigable waters. The purposes of the regulations shall be to further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structure and land uses and reserve shore cover and natural beauty.

¶23 "The basic purpose of a shoreland zoning ordinance is to protect navigable waters and the public rights therein from the degradation and deterioration which results from uncontrolled use and development of shorelands." <u>Forest Cnty.</u>

---

[4] Wisconsin has long been a national leader in shoreland protection through zoning. The passage of the Navigable Waters Protection Law, Wis. Stat. § 281.31, made Wisconsin the "first state to enact zoning legislation specifically designed to protect public water resources through the regulation of land use activities on contiguous shorelands." Tracy K. Kuczenski, <u>Wisconsin's Shoreland Management Program: An Assessment With Implications For Effective Natural Resources Management and Protection</u>, 1999 Wis. L. Rev. 273, 274 (1999).

v. Goode, 219 Wis. 2d 654, 678, 579 N.W.2d 715 (1998) (citation omitted); see Just v. Marinette Cnty., 56 Wis. 2d 7, 16-17, 201 N.W.2d 761 (1972).  Shoreland zoning also serves to balance the public and private interests in shoreland areas.  Paul G. Kent, On the Waterfront:  New Shoreland Zoning Laws, 90 Wis. Law. 14, 15 (Jan. 2017).

¶24 Although general zoning authority is granted to both counties and towns, see Wis. Stat. §§ 59.69, 60.61, the authority to enact zoning ordinances specific to shorelands lies with counties alone.[5]  Wis. Stat. § 59.692(1c); see Hegwood v. Town of Eagle Zoning Bd. of Appeals, 2013 WI App 118, ¶9, 351 Wis. 2d 196, 839 N.W.2d 111;[6] Herman v. Cnty. of Walworth, 2005

---

[5] For purposes of Wis. Stat. § 59.692, "shorelands" are defined as:

> [T]he area within the following distances from the ordinary high-water mark of navigable waters, as defined under s. 281.31(2)(d):
>
> 1. One thousand feet from a lake, pond or flowage.  If the navigable water is a glacial pothole lake, this distance shall be measured from the high-water mark of the lake.
>
> 2. Three hundred feet from a river or stream or to the landward side of the floodplain, whichever distance is greater.

Wis. Stat. § 59.692(1)(b).

[6] In Hegwood, the court of appeals determined that "[t]he plain language of the statutory scheme evinces that by enactment of Wis. Stat. §§ 281.31 and 59.692, the legislature intended that towns would not have authority to regulate shorelands except where such regulation fell within the language of § 59.692(2)(b)," a grandfather clause that no party argues applies here.  Hegwood v. Town of Eagle Zoning Bd. of Appeals, 2013 WI App 118, ¶16, 351 Wis. 2d 196, 839 N.W.2d 111.

9

WI App 185, ¶18, 286 Wis. 2d 449, 703 N.W.2d 720.  Section 59.692(1c) provides in relevant part:  "To effect the purposes of s. 281.31 and to promote the public health, safety and general welfare, each county shall zone by ordinance all shorelands in its unincorporated area.  The requirements in this ordinance shall relate to the purposes in s. 281.31(1)."

¶25  A county shoreland zoning ordinance enacted pursuant to Wis. Stat. § 59.692 cannot be more restrictive than the standards that have been enacted at the state level:  "An ordinance enacted under this section may not regulate a matter more restrictively than the matter is regulated by a shoreland zoning standard."[7]  § 59.692(1d)(a).  The previous sentence, however, "does not prohibit a county from enacting a shoreland zoning ordinance that regulates a matter that is not regulated by a shoreland zoning standard."  § 59.692(1d)(b).

---

As the court of appeals in the present case observed, subsequent to the Hegwood decision the legislature passed 2015 Wis. Act 41.  See Anderson, 389 Wis. 2d 309, ¶11 n.2.  The court of appeals stated that this enactment "appear[s] to modify our decision in Hegwood to clarify that although towns do not have authority to enact a zoning ordinance that is specific to shoreland areas, they may still enact and apply a general zoning ordinance that applies in both shoreland and non-shoreland areas."  Id. (citing Wis. Stat. §§ 60.61(3r) and 60.62(5)).  Act 41 does not affect our analysis and we need not interpret or further discuss the provisions it created.

[7] A "shoreland zoning standard" is defined as "a standard for ordinances enacted under this section that is promulgated as a rule by the department [of natural resources]."  Wis. Stat. § 59.692(1)(c); see Wis. Admin. Code § NR 115.05 (Jan. 2017).

¶26 As stated, zoning ordinances are not the only means by which governmental entities can engage in community planning. The legislature has additionally given subdivision authority to certain entities.

¶27 The authority to enact subdivision regulations arises from Wis. Stat. § 236.45. Setting forth a litany of purposes in this statutory section, the legislature provided:

> The purpose of this section is to promote the public health, safety and general welfare of the community and the regulations authorized to be made are designed to lessen congestion in the streets and highways; to further the orderly layout and use of land; to secure safety from fire, panic and other dangers; to provide adequate light and air, including access to sunlight for solar collectors and to wind for wind energy systems; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements; to facilitate the further resubdivision of larger tracts into smaller parcels of land. The regulations provided for by this section shall be made with reasonable consideration, among other things, of the character of the municipality, town or county with a view of conserving the value of the buildings placed upon land, providing the best possible environment for human habitation, and for encouraging the most appropriate use of land throughout the municipality, town or county.

§ 236.45(1).

¶28 To accomplish the purposes listed in subsec. (1), Wis. Stat. § 236.45(2)(ac) grants to "any municipality, town or county that has established a planning agency" the authority to "enact ordinances governing the subdivision or other division of land that are more restrictive than the provisions of this chapter, except that no ordinance may modify in a more

11

restrictive way time limits, deadlines, notice requirements, or other provisions of this chapter that provide protections for a subdivider." Such ordinances "may include provisions regulating divisions of land into parcels larger than 1 1/2 acres or divisions of land into less than 5 parcels." § 236.45(2)(am).

¶29 Although they often work together, zoning and subdivision regulations provide separate and distinct means of regulating the development of land. In Storms, the court considered the question of whether the Town of Sun Prairie had authority under Wis. Stat. § 236.45 to adopt an ordinance regulating minimum lot size. 110 Wis. 2d at 60. Answering in the affirmative, the court explained that lot size regulation furthers several of the policy goals of ch. 236, including orderly layout and use of land, preventing overcrowding of land, avoiding undue concentration of population, providing the best possible environment for human habitation, encouraging the most appropriate use of land and providing for adequate light and air. Id. at 65.

¶30 The court further addressed the relationship between zoning and subdivision, indicating that both may deal with minimum lot sizes. Id. at 67. There are areas of overlap between the two powers, but there are also key differences.

> Both are aimed at the orderly development of a community. Though zoning is aimed at controlling the uses of land and existing resources, subdivision regulations are designed to control the division of land and to assure that such developments thereon are designed to accommodate the needs of the occupants of the subdivision.

12

Id. at 68 (quotation omitted). "The purpose of zoning is to provide an overall comprehensive plan for land use, while subdivision regulations govern the planning of new streets, standards for plotting new neighborhoods, and the protection of the community from financial loss due to poor development." Id. (quotation omitted).

¶31 In other words, zoning and subdivision are "complementary land planning devices. Subdivision control is concerned with the initial division of undeveloped land, while zoning more specifically regulates the further use of this land." Id. "The fact that minimum lot size may also be regulated by zoning ordinances does not detract from the power of local governments to exercise such power pursuant to ch. 236, Stats." Id. at 70.

¶32 Thus, Storms stands for the proposition that zoning and subdivision regulation are separate, yet sometimes overlapping, powers. See also Wood v. City of Madison, 2003 WI 24, ¶23, 260 Wis. 2d 71, 659 N.W.2d 31 (recognizing a similarity between the purposes of zoning and subdivision plat approval authority). The Storms court was also careful to delineate that the two powers stem from separate enabling legislation. "As long as the regulation is authorized by and within the purposes of ch. 236, the fact that it may also fall under the zoning power does not preclude a local government from enacting the regulation pursuant to the conditions and procedures of ch. 236." Storms, 110 Wis. 2d at 70-71.

13

B

¶33 With this necessary background in hand, we examine next Anderson's specific arguments.

¶34 Anderson contends that the Town of Newbold Ordinance 13.13 is a zoning ordinance in disguise that impermissibly regulates shorelands in a manner contrary to Wis. Stat. § 59.692. He observes a dissonance in a statutory scheme that allows the Town to regulate shoreland property as an exercise of subdivision authority when it would be prohibited from doing so by means of its zoning authority.

¶35 The essential question posed in this case is whether Town of Newbold Ordinance 13.13 is a zoning ordinance or a subdivision ordinance. In other words, we must determine the source of the authority under which the ordinance was passed.

¶36 This court has previously offered guidance and a framework of analysis for the determination of whether an ordinance springs from a governmental entity's zoning authority. See Zwiefelhofer v. Town of Cooks Valley, 2012 WI 7, 338 Wis. 2d 488, 809 N.W.2d 362. In Zwiefelhofer, the court addressed whether the Town of Cooks Valley's nonmetallic mining ordinance is a zoning ordinance so as to require approval of the county board. Id., ¶2.

¶37 In determining that the ordinance at issue was not a zoning ordinance, the court did not set a bright-line rule. Id., ¶8. Instead, it used a functional approach where it "catalogue[d] the characteristics of traditional zoning ordinances and the commonly accepted purposes of zoning

14

ordinances. We then compare[d] the characteristics and purposes of the Ordinance to the characteristics and purposes of traditional zoning ordinances to determine whether the Ordinance should be classified as a zoning ordinance." Id.

¶38 In conducting such an analysis, "[n]o single characteristic or consideration is dispositive of the question whether the Ordinance is a zoning ordinance." Id., ¶9. Nor is the conclusion a result of a simple tally of the similarities and differences. Indeed, a court may not "simply add up the number of similarities a challenged ordinance has to traditional zoning ordinances or the number of differences a challenged ordinance has from traditional zoning ordinances to determine whether a challenged ordinance is a zoning ordinance." Id.

¶39 The analysis must be specific to the ordinance at issue in the particular case. "Some characteristics, under the circumstances of the case, may be more significant than others." Id.

¶40 Characteristics of an ordinance that inform the determination of whether the ordinance is a zoning ordinance include: (1) zoning ordinances typically divide a geographic area into multiple zones or districts, id., ¶36; (2) within the established districts or zones, certain uses are typically allowed as of right and certain uses are prohibited, id., ¶38; (3) zoning ordinances are traditionally aimed at directly controlling where a use takes place as opposed to how it takes place, id., ¶39; (4) traditionally classifying uses in general terms, zoning ordinances attempt to comprehensively address all

15

possible uses in the geographic area, id., ¶40; (5) zoning ordinances traditionally make a fixed, forward-looking determination regarding what uses will be permitted as opposed to case-by-case determinations, id., ¶41; and (6) traditional zoning ordinances allow certain landowners whose land use was legal prior to the adoption of the zoning ordinance to maintain their land use despite its failure to conform to the ordinance. Id., ¶42.

¶41 This list is not intended to be exhaustive. Id., ¶43. As the Zwiefelhofer court recognized, "[m]any jurisdictions, including Wisconsin, have certainly recognized the possibility that an ordinance need not fit the traditional mold perfectly in order to constitute zoning." Id. However, the characteristics identified constitute the "heart of traditional zoning ordinances." Id.

¶42 The Zwiefelhofer court further detailed both broad and narrow purposes of zoning ordinances. Broadly, zoning ordinances have the purpose of promoting the welfare of the community, regulating the growth and development of a city in an orderly manner, conserving property values, and encouraging the most appropriate use of land. Id., ¶¶45-46. These purposes provide little assistance to the analysis, however, due to their breadth and the fact that they "could apply to a far-reaching range of planning and regulation undertaken by local governments." Id., ¶46. More specific purposes of zoning include confining certain classes of buildings and uses to

16

certain localities and separating incompatible from compatible land uses. Id., ¶¶47-48.

¶43  To determine whether the Town of Newbold ordinance at issue here is a zoning ordinance, we apply the Zwiefelhofer framework. Our analysis of the Zwiefelhofer factors is framed by the statutory mandate to liberally construe subdivision ordinances in the Town's favor. Specifically, Wis. Stat. § 236.45(2)(b) provides that "[t]his section and any ordinance adopted pursuant thereto shall be liberally construed in favor of the municipality, town or county and shall not be deemed a limitation or repeal of any requirement or power granted or appearing in this chapter or elsewhere, relating to the subdivision of lands." This court has recognized that § 236.45(2)(b) reserves to the Town "a broad area of discretion in implementing subdivision control" and constitutes a "grant of wide discretion which a municipality may exercise by ordinance or appropriate resolution." City of Mequon v. Lake Estates Co., 52 Wis. 2d 765, 774, 190 N.W.2d 912 (1971).

¶44  Pursuant to the Zwiefelhofer framework, and through the lens of the required liberal construction, it is apparent that the Town's ordinance is not a zoning ordinance. Most importantly, Town of Newbold Ordinance 13.13 has nothing to do with the use of land. It says nothing of how Anderson can use his land, only that he cannot split into the portion he seeks. Indeed, the ordinance addresses minimum lot size, an area that this court has recognized can be addressed in both the zoning and subdivision contexts. See Storms, 110 Wis. 2d at 70.

17

¶45 Second, the Town of Newbold ordinance does not divide the land into any type of zone or district. Although it contains different lot size requirements for areas bordering on various lakes within the Town, this does not make it a zoning ordinance. The characteristics of a zoning ordinance recognized by the Zwiefelhofer court indicate that the hallmark of a zoning ordinance is some type of use restriction. See Zwiefelhofer, 338 Wis. 2d 488, ¶¶38-42. No such restriction is present here.

¶46 Driving the determination in the present case are the first two Zwiefelhofer factors——division of a geographic area into zones or districts and the allowance or prohibition of certain uses within those zones. See id., ¶9 ("Some characteristics, under the circumstances of the case, may be more significant than others."). We need not exhaustively analyze the remaining Zwiefelhofer factors because they presuppose that the ordinance in question regulates land use in some way. As stated, Town of Newbold Ordinance 13.13 does not support such a presupposition.

¶47 Thus, pursuant to the Zwiefelhofer factors, Town of Newbold Ordinance 13.13 is not a zoning ordinance. It does not concern land use and it does not separate compatible and incompatible land uses, which is a key purpose of a zoning ordinance. See id., ¶48.

¶48 Because it is not a zoning ordinance, the restrictions on Town enactment of zoning ordinances set by Wis. Stat. § 59.692 do not apply. Pursuant to § 59.692(1d), "[a]n ordinance enacted under this section may not regulate a matter

18

more restrictively than the matter is regulated by a shoreland zoning standard." Yet, the Town of Newbold ordinance at issue was not "enacted under this section," as it is not a zoning ordinance.

¶49 Instead, Ordinance 13.13 is a subdivision ordinance enacted pursuant to Wis. Stat. § 236.45. As this court has previously determined, just because an area may be susceptible to regulation through zoning does not mean that regulation through subdivision is precluded. Storms, 110 Wis. 2d at 70-71. Indeed, lot size may be regulated by use of both zoning and subdivision authority and there is nothing in ch. 236 to indicate that shoreland areas are exempt from subdivision regulation. For the reasons stated, the regulation at issue here stems from subdivision authority and not zoning authority.

IV

¶50 We therefore conclude that the Town ordinance at issue is a permissible exercise of the Town's subdivision authority pursuant to Wis. Stat. § 236.45. The Town thus proceeded on a correct theory of law when it denied Anderson's request to subdivide his property in a way that would contravene the ordinance.

¶51 Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶52 BRIAN HAGEDORN, J. *(dissenting).* This case considers the interplay of two different local government powers——the power to divide land and the power to zone——and even more importantly, how these powers may or may not be exercised by towns on shorelands. The majority's analysis turns on whether the ordinance the Town of Newbold relied on to deny Anderson's proposed land division is a zoning ordinance or a subdivision ordinance. After concluding it is a subdivision ordinance, the majority reasons that a town subdivision ordinance is not subject to the restriction that ordinances enacted under Wis. Stat. § 59.692 (2019-20)[1]——that is, county shoreland zoning ordinances——"may not regulate a matter more restrictively than the matter is regulated by a shoreland zoning standard." § 59.692(1d)(a). In other words, the Town is exercising subdivision authority, and § 59.692(1d)(a) does not prohibit the Town from regulating more restrictively.

¶53 While I agree that the ordinance in question is a subdivision ordinance and that it is not subject to the restriction in Wis. Stat. § 59.692(1d)(a), I disagree with the ultimate conclusion because these are the right answers to the wrong questions. The relevant and dispositive statutory provision in this case is § 59.692(2)(b). It provides that the more restrictive provisions of any kind of town ordinance relating to shorelands, including a subdivision ordinance, only

---

[1] All subsequent references to the Wisconsin Statutes are to the 2019-20 version.

1

have effect if the ordinance creating those more restrictive provisions predated the county shoreland zoning ordinance. § 59.692(2)(b). Therefore, while towns have some zoning and subdivision authority over shorelands, their power to regulate more restrictively than provisions in a county shoreland zoning ordinance is preempted unless those more restrictive provisions predate the county shoreland zoning ordinance. The Town does not contend § 59.692(2)(b) operates to save the more restrictive provision at issue here, and therefore it acted contrary to law in relying on its ordinance to deny Anderson's proposed land division. For these reasons, I respectfully dissent.

## I. BACKGROUND

¶54 The relevant facts are straightforward. Michael Anderson owned a lakefront lot in the Town of Newbold with 358.43 feet of riparian frontage. He proposed dividing his lot into two, with riparian frontage widths of 195 and 163.43 feet, respectively. The county shoreline zoning ordinance requires a minimum riparian frontage width of 100 feet.[2] The proposed division therefore satisfied the requirements of the county shoreline zoning ordinance. The Town, meanwhile, adopted an ordinance that has a separate, more restrictive 225-foot minimum riparian frontage width on the particular lake in question. Town of Newbold Ordinance 13.13.02. On this basis, the Town denied Anderson's proposed division.

---

[2] The county ordinance is not in the record, but the parties do not appear to disagree on this point.

2

¶55 On appeal of this decision, we must decide whether the Town may enforce a minimum riparian frontage width more restrictive than the riparian frontage width regulations in the county shoreland zoning ordinance. It may not.

## II. DISCUSSION

¶56 Anderson's claim is before us on a petition for certiorari review under Wis. Stat. § 68.13(1). On certiorari, this court's

> review is limited to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

Snyder v. Waukesha Cnty. Zoning Bd. of Adjustment, 74 Wis. 2d 468, 475, 247 N.W.2d 98 (1976). The specific challenge here is whether the Town proceeded on a correct theory of law. This rests on an interpretation of the statutory powers of towns, which we review de novo. See Wood v. City of Madison, 2003 WI 24, ¶12, 260 Wis. 2d 71, 659 N.W.2d 31.

¶57 The legislature has given various powers and duties to local government. This litigation concerns two of them: the power to zone and the power to subdivide. These two powers are separate, but complementary and overlapping land planning devices. Town of Sun Prairie v. Storms, 110 Wis. 2d 58, 68-69, 327 N.W.2d 642 (1983). The specific question in this case concerns the extent to which towns may exercise their

3

subdivision powers on shorelands in ways that are more restrictive than a county shoreland zoning ordinance enacted under Wis. Stat. § 59.692.

### A. General Statutory Background

¶58 The power to divide undeveloped land or larger parcels of land into smaller parcels is of longstanding origins, even predating Wisconsin statehood. See Stat. 1839, ch. 41, p. 159-61. The legislature granted local governments this power in Wis. Stat. § 236.45, extending it to "any municipality, town or county." § 236.45(2)(ac). Provided those governmental entities have a planning agency, they "may enact ordinances governing the subdivision or other division of land." Id. Generally speaking, the power to subdivide is broad and construed liberally. § 236.45(2)(b) ("This section and any ordinance adopted pursuant thereto shall be liberally construed in favor of the municipality, town or county and shall not be deemed a limitation or repeal of any requirement or power granted or appearing in this chapter or elsewhere, relating to the subdivision of lands.").

¶59 State law, however, treats navigable waters and their shorelands with special care. Wisconsin Stat. § 281.31 of the Wisconsin statutes is entitled, "Navigable waters protection law."[3] It explains that the regulation of shorelands is in

---

[3] Chapter 281 of the Wisconsin statutes governs water and sewage generally.

"fulfillment of the state's role as trustee of its navigable waters." § 281.31(1). In particular, "it is declared to be in the public interest" to "authorize municipal shoreland zoning regulations," among other things. Id. The purposes of these regulations include "control [of] building sites, placement of structure and land uses and reserve shore cover and natural beauty." Id.

¶60 Wisconsin Stat. § 281.31 points to a statewide scheme for shoreland regulation. It directs the Department of Natural Resources (DNR) to create "a comprehensive plan" for "municipal ordinances regulating navigable waters and their shorelands," and to "prepare and provide to municipalities general recommended standards and criteria for . . . navigable water protection regulations." Wis. Stat. § 281.01(3); § 281.31(5), (6). Subsection (7) mandates intergovernmental consultation and cooperation with the goal of "voluntary uniformity of regulations, so far as practicable." § 281.31(7). In other words, the hope is that the state can work with municipalities to achieve as much uniformity in shoreland regulations statewide as possible.

¶61 This section also tells us what it means by the "regulations" it authorizes and discusses.

> "Regulation" means ordinances enacted under [Wis. Stat. §§] 59.692, 61.351, 61.353, 62.23(7), 62.231, and 62.233 and refers to subdivision and zoning regulations which include control of uses of lands under, abutting, or lying close to navigable waters for the purposes specified in sub. (1), pursuant to

5

any of the zoning and subdivision control powers delegated by law to cities, villages, and counties.

Wis. Stat. § 281.31(2)(e) (emphasis added). Each of the enumerated statutes in this provision outline the power to zone by ordinance in shorelands. Wisconsin Stat. §§ 61.351 and 61.353 discuss village shoreland zoning power, while Wis. Stat. §§ 62.23(7), 62.231, and 62.233 govern city zoning power generally and over shorelands. And of course, Wis. Stat. § 59.692 involves county shoreland zoning ordinances based on statewide shoreland zoning standards.

¶62 Connecting these dots, regulations under Wis. Stat. § 281.31 refer to ordinances adopted under zoning provisions "and refers to subdivision and zoning regulations which include control of uses of lands under, abutting, or lying close to navigable waters." § 281.31(2)(e) (emphasis added). The reference to "subdivision" regulations here can only refer to Wis. Stat. § 236.45 because that is where that power is located. Thus, county and municipal regulations governing shorelands include both subdivision and zoning regulations.

¶63 Lest the relevance of this be missed, Wis. Stat. § 281.31 is not an otherwise unrelated section that occasionally references Wis. Stat. § 59.692. These two sections are parallel, overlapping, and interdependent; one cannot be read

6

without the other.[4]    We know this because the text says so in § 281.13(8):  "This section and [§§] 59.692 [and the village and city shoreland zoning provisions] shall be construed together to accomplish the purposes and objective of this section." Multiple provisions reinforce this with cross referenced definitions, exclusions, and requirements.[5]  To state it plainly, we are instructed by the statutes to construe the county shoreland zoning powers in Wis. Stat. § 59.692 consistent with and together with Wis. Stat. § 281.31 in order to accomplish the statewide purposes of protecting navigable waters and their shorelands.

### B.  County Shoreland Zoning Ordinances & Town Power

¶64  This brings us to the main question before us:  the power of towns to regulate in ways more restrictive than county shoreland zoning ordinances.

¶65  Wisconsin towns have some zoning authority.  See Wis. Stat. § 60.61.   However, they have limited zoning power over shorelands on navigable waters.  Section 60.61(3r) provides that

---

[4] For example, Wis. Stat. § 281.31(2)(f) defines shorelands by reference in part to Wis. Stat. § 59.692(1)(b).   Section 281.31(2m) also indicates some areas where a required county shoreland zoning ordinance under § 59.692 does not apply.  These are two of many examples which lend contextual and structural support to reading these provisions together.  See State v. Powers, 2004 WI App 156, ¶12, 276 Wis. 2d 107, 687 N.W.2d 50 (discussing cross-references as contextual and structural textual clues).

[5] The original versions of these statutes were enacted at the same time.  §§ 22, 42, ch. 614, Laws of 1965.

towns "may enact a zoning ordinance . . . that applies in shorelands," but "[a] town zoning ordinance . . . may not impose restrictions or requirements in shorelands with respect to matters regulated by a county shoreland zoning ordinance . . . affecting the same shorelands." § 60.61(3r)(b), (c); see also Wis. Stat. § 60.62(5). The legislature gave primacy to county shoreland zoning ordinances in 1966. § 22, ch. 614, Laws of 1965. Therefore, a town's zoning power over shorelands is limited; it may not be more restrictive than a county shoreland zoning ordinance adopted pursuant to Wis. Stat. § 59.692.

¶66 Chapter 59 of the Wisconsin Statutes is dedicated to counties. Wisconsin Stat. § 59.692 governs, as its title says, "zoning of shorelands on navigable waters."[6] Subsection (1c) gives the basic requirement and its rationale. Each county must "zone by ordinance all shorelands in its unincorporated area." § 59.692(1c). The reason for this requirement is "[t]o effect the purposes of [Wis. Stat. §] 281.31." Id. Consequently, ordinances must "relate to the purposes in [§] 281.31(1)." Id.

¶67 While the municipal zoning powers described in Wis. Stat. § 281.31 aim for voluntary uniformity, Wis. Stat. § 59.692 mandates a degree of uniformity for shorelands regulated by a county shoreland zoning ordinance——including shorelands in towns. Paragraph (1d)(a) provides that a county shoreland

---

[6] This language is another explicit tie to Wis. Stat. § 281.31, whose title says it is about protecting "navigable waters." Compare Wis. Stat. § 59.692 with § 281.31.

8

zoning ordinance "may not regulate a matter more restrictively than the matter is regulated by a shoreland zoning standard." § 59.692(1d)(a). And a "shoreland zoning standard" is defined as "a standard for ordinances enacted under this section that is promulgated as a rule by the department." § 59.692(1)(c); see also § 59.692(1)(a) (defining "department" as DNR). Thus, DNR will by rule specify certain matters——shoreland zoning standards——and county shoreland zoning ordinances may not be more restrictive than the specific standards adopted by rule.

¶68 However, paragraph (1d)(b) allows counties to adopt shoreland zoning ordinances that regulate "a matter that is not regulated by a shoreland zoning standard." Wis. Stat. § 59.692(1d)(b). Therefore, if the matter is not covered by one of the statewide shoreland zoning standards adopted by rule, a county retains power through a county shoreland zoning ordinance to regulate it.

¶69 What, then, of the power of towns? The statute tackles this question head-on in Wis. Stat. § 59.692(2)(b). In my view, this provision is the dispositive statutory section governing this case.

¶70 Wisconsin Stat. § 59.692(2)(b) provides: "If an existing town ordinance relating to shorelands is more restrictive than an ordinance later enacted under this section affecting the same shorelands, it continues as a town ordinance in all respects to the extent of the greater restrictions, but not otherwise." This provision means several things. First, a "town ordinance relating to shorelands" that predates a later-

9

enacted county shoreland zoning ordinance is, with one exception, no longer in effect. A county shoreland zoning ordinance preempts the preexisting town ordinance regulating shorelands. Second, the only exception to this rule is that the more restrictive provisions of a preexisting town ordinance remain in effect. Third, by necessary implication, more restrictive provisions in a later-enacted town ordinance "relating to shorelands" may not take effect. Only the more restrictive provisions of preexisting town ordinances are grandfathered in.

¶71 These conclusions are dispositive in this case because this section does not limit itself to town zoning ordinances; it applies to any "town ordinance relating to shorelands." The plain language includes ordinances of any type, including subdivision ordinances. If there be any doubt on this point, paragraph (2)(bg) settles the matter. It provides: "A town may enact a zoning ordinance affecting the same shorelands as an ordinance enacted under this section, subject to the restrictions in ss. 60.61(3r) and 60.62(5)." Wis. Stat. § 59.692(2)(bg).[7] And again, Wis. Stat. §§ 60.61(3r) and 60.62(5) authorize towns to enact zoning ordinances relating to shorelands, except that they may not regulate more restrictively on matters regulated by a county shoreland zoning ordinance. This means that paragraph (2)(b) cannot be referring to town zoning ordinances alone. The language in (2)(bg) shows that the

---

[7] This paragraph was created by 2019 Wis. Act 145.

10

legislature knows how to specify zoning ordinances if it wants to. It plainly did not limit the restriction in (2)(b) to town zoning ordinances.[8]

¶72 This reading is further reinforced by the administrative code. As noted above, Wis. Stat. § 281.31 and Wis. Stat. § 59.692 do not stand alone. They explicitly reference standards to be adopted by rule. The relevant rule provisions are found in Wis. Admin. Code ch. NR 115 (Jan. 2017).[9]

¶73 Wisconsin Admin. Code § NR 115.01 states the purpose and statutory grounding for this provision, and provides in relevant part:

> Section 281.31, Stats., provides that shoreland subdivision and zoning regulations shall: "further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structure and land uses and reserve shore cover and natural beauty." Section 59.692, Stats., requires counties to effect the purposes of [§] 281.31, Stats., and to promote the public health, safety and general welfare by adopting zoning regulations for the protection of all shorelands in unincorporated areas that meet shoreland zoning standards promulgated by the department. The purpose of this chapter is to establish minimum shoreland zoning standards for ordinances enacted under [§] 59.692, Stats., for the purposes specified in [§] 281.31 (1), Stats., and to limit the direct and

---

[8] State v. Quintana, 2008 WI 33, ¶32, 308 Wis. 2d 615, 748 N.W.2d 447 ("When the legislature does not use words in a restricted manner, the general terms should be interpreted broadly to give effect to the legislature's intent.").

[9] All subsequent references to Wisconsin Administrative Code ch. NR 115 are to the January 2017 register date unless otherwise indicated.

11

> cumulative impacts of shoreland development on water quality; near-shore aquatic, wetland and upland wildlife habitat; and natural scenic beauty.

§ NR 115.01 (emphasis added). The broader import of these provisions is that they were written to mean something, to have statewide effect. And the very first sentence makes clear that Wis. Stat. § 281.31, including its specific inclusion of ordinances adopted under Wis. Stat. § 59.692, is directed at limitations on both "shoreland subdivision and zoning regulations." § NR 115.01

¶74 The specific shoreland zoning standards referenced in Wis. Stat. § 59.692 are delineated in Wis. Admin. Code § NR 115.05. They cover minimum lot sizes; building setbacks; vegetation; filling, grading, lagooning, dredging, ditching, and excavating; impervious surfaces; height; and nonconforming structures and uses. § NR 115.05(1). But the language of this section contains a broad and preemptive flair: "The shoreland zoning ordinance adopted by each county shall control use of shorelands." Id. (emphasis added).

¶75 Wisconsin Admin. Code § NR 115.06 places additional review duties on DNR to ensure any county shoreland zoning or subdivision ordinance complies with Wis. Stat. § 59.692, including by issuing a certificate of compliance and providing advice and assistance to counties. § NR 115.06(1), (2). There is simply no reason to think the legislature meant to require county subdivision ordinances to comply with and go no further than the county shoreland zoning ordinance, only to have them superseded by a town subdivision ordinance.

12

¶76 The statutes and administrative rules point in the same direction: a county shoreland zoning ordinance controls where it speaks, and other county or town ordinances may not be more restrictive——excepting a preexisting town ordinance's more restrictive provisions.

¶77 Like the court of appeals, the majority relies on the language in Wis. Stat. § 59.692(1d) that county shoreland zoning ordinances "may not regulate a matter more restrictively than the matter is regulated by a shoreland zoning standard." § 59.692(1d). Since a town subdivision ordinance is not a county shoreland zoning ordinance, the majority reasons that this section does not limit town subdivision authority. I agree that the Town's ordinance is a subdivision ordinance. But § 59.692(2)(b) does not concern itself with this distinction. That provision limits the authority of a town to override the provisions in a county shoreland zoning ordinance regardless of whether the Town utilizes its zoning or subdivision authority. That is the on-point statute that decides this case.

¶78 The practical effect of the majority's approach is to read the shoreland zoning restrictions out of the statutes, at least as applied to towns. If towns can do via subdivision authority exactly the same things that the state says they cannot do, the state's legislative policy choice to limit the power of towns and require some baseline uniformity in county shoreland zoning ordinances over specific matters becomes a dead letter. That is an absurd result; this is not the best way to read the governing law. Section 59.692(2)(b), along with the

13

associated provisions in Wis. Stat. §§ 281.31, 60.61 and 60.62, and in Wis. Admin. Code § NR 115 demonstrate that reading is not correct.

## C. Application

¶79 In this case, the Town of Newbold's subdivision ordinance adopts a more restrictive riparian frontage width (225 feet) than that adopted in the county shoreland zoning ordinance (100 feet). Under Wis. Stat. § 59.692(2)(b), this more restrictive provision cannot have effect unless it was adopted prior to the county shoreland zoning ordinance. Counsel for the Town was asked at oral argument whether § 59.692(2)(b) applied, and counsel said it did not. We have no other evidence in the record that suggests the Town's more restrictive provision was adopted prior to the county shoreland zoning ordinance. Therefore, the Town's more restrictive riparian frontage width requirement is preempted and without effect; the 100-foot riparian frontage width in the county shoreland zoning ordinance controls. As a consequence, the Town proceeded on an incorrect theory of law when it denied Anderson's proposed land division based on its preempted ordinance provision.

¶80 I would reverse the court of appeals on this basis and respectfully dissent.

¶81 I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this dissent.

14